So first case on the calendar, United States v. O'Brien, and we have Mr. Silverman for the appellant. Speaking, Your Honor. Good morning. Good morning. Mr. Gura for the government. Present, Your Honor. All right. Great. All right, Mr. Silverman, I see you reserved three minutes for rebuttal. Go ahead. Thank you. Good morning. Ben Silverman for Don O'Brien. The court below garnished money that was not owed. It ordered turnover and lump sum, an entire retirement asset, even though the restitution order and the criminal judgment expressly provided for a payment schedule and expressly declined to impose the lump sum payment obligation. The government never moved to modify the judgment, and it must live with the terms of the judgment. The government makes claims of default before this court, but it concedes on page 26 of that it never sought the remedy of accelerated payments in the event of default, and it never made a record below to establish a default and doesn't appear to have tried to. And in fact, Mr. Silverman, can the government do so now, in your view? I don't think so. For several reasons. First, it concedes in footnote 12 that there are documents not in the record illustrating or proving payments by Mr. O'Brien not indicated on the district court's docket sheet, which corroborates one of his unrebutted statements and his affidavit of A110. Well, wait, that's saying they can't successfully move now because there are going to be problems in the factual record. But would they be entitled to make that motion if they could establish whatever facts you think are necessary? No, Your Honor, they never moved below under 3571 or 3163. They never made a motion to accelerate payments for default. I'm sorry. I'm still – I just want to know the answer, yes or no. In your view, is it too late now for the government to make the motion that you say they should have made in order to accelerate the payments or avail themselves of the remedies that they sought? My view is that it's too late. My view is that they could move – So then in your view, is it the case that the payment schedule effectively undoes the judgment of restitution? Because you know how many years it would take to pay back the amount that is due and owing on the repayment schedule? More years than anyone could reasonably be expected to live. More years than 450. Right. So two points, Your Honor. First, to be clear, I don't think it's too late for them to make the motion in the district court. I think it's too late for them to make it before this court, not having made it below. I think that they're entitled to make the motion in the district court in the first instance and to build the record. What about the fact that your client didn't object on this ground in a timely way at all? So Your Honor, this court should not exercise a prudential waiver argument that allows the government to garnish substantially more money that's owed to it under the plain terms of a judgment that's one page at A83, a restitution order, that expressly imposes a payment schedule, and even though given the option, expressly declined to make the lump sum immediately due. The government had – But Mr. Silverman, what is owed is millions of dollars, correct? That's the size of it. And Your Honor, if you look at – And so when you say they are asking for more than they are owed, that's not strictly accurate. The repayment schedule, if your client – I'm putting aside the quibbles over how many dollars he actually paid. If your client was paid up on the repayment schedule, I take it he could not be held in contempt. He could not be fined in some way or found to have violated the terms of supervised release or anything of the sort. He hasn't done anything wrong, correct? That's his view, and that's unrebutted. He put it in an affidavit – But is that the same thing as saying he doesn't owe the money? Well, I understand Your Honor's point, but I would say, look, if you take a home mortgage, you owe X large sum of money, but that doesn't entitle – in terms of owing, what's the government entitled to? By the terms of a mortgage contract, they're entitled to payments every month, and they can be accelerated if a default is shown. Well, but if we're talking about the contract, let's put aside the question of prudential waiver or forfeiture of the argument. What about explicit waiver in the plea agreement, which says that creating the payment schedule does not prevent the government from taking whatever ordinary steps they could take to collect the debt? Well, two things. First, the plea agreement expressly contemplates a payment schedule, and what it says is, I don't owe money to the IRS or other governmental actions, and what I understand that to mean is the Justice Department is saying that they're not barring the IRS from pursuing money not garnished or not ordered in the restitution in this case, but the Justice Department is certainly binding itself by the plea agreement in terms of what it does in this case on the criminal docket sheet in this case, and moreover, this is a charge bargain, an 11C1A plea agreement. It is the district court's judgment that ultimately governs, and the government certainly could have and perhaps should have asked the district court or the magistrate judge to impose a lump sum of a retirement account identified in the PSR and make it immediately payable. Many restitution orders and forfeiture orders accompanying criminal pleas identify assets to be immediately turned over as forfeiture or restitution. The government could have moved under rules, I'm sorry, Judge. I keep referring to the judgment and didn't say do immediately, but the payment plan itself says payment of at least, I emphasize at least $500, so even the judgment didn't suggest under the plan that it was limited to $500, and then as Judge Lynch pointed out, I mean, you're reading the plea agreement narrower than the language, it says the parties agree that the existence of a payment plan set by the court, so not by the IRS, but then it goes on to say, and other governmental collection efforts against any of the defendants of the assets, so why doesn't the at least language in the judgment combined with the plea agreement allow the district court to do this? Well, the at least language in the judgment was copied from the PSR, and it makes sense as recommendation to the judge to impose a payment schedule of at least $500 a month. What it means in the judgment, having been copied into it, I think is that he's free to pay more. There was a time in this circuit when a probation officer could alter up a schedule. That's no longer the case, although it does appear to be the case in a non-MPRA case in the Third Circuit where Mr. O'Brien was supervised, and in terms of the language in the plea agreement, if you look at, just take the doctrine of astutum generis and a statute, what you have is IRS for other governmental collection actions as something separate and apart from the case. Even if that's completely in tension with the other language in the plea agreement that the payment should be on a schedule set by the court, the ambiguity in the agreement would have to be construed strictly against the government who drafted the agreement. If that language meant that the government could completely exceed the payment schedule, regardless of what the district court ordered, it would have serious constitutional problems because payment schedules are often necessary to avoid Eighth Amendment issues under the Supreme Court's decision in Paroline. But you're not suggesting that's true here, that there's an Eighth Amendment issue? In terms of factually, no, but this is boilerplate language, and so the government's argument based on boilerplate language that's put into tax evasion agreements about the IRS and other government forfeiture actions, I agree, Your Honor. What appears to have happened here is that the government realizes it should have moved under Rule 35 to amend the judgment, as a defense lawyer typically will if they see a mistake after the judgment is docketed, but the government never directly appealed it. More than one year has passed since the appeal became final. Ordinarily, the government at this point would be talking about the finality of the judgment that had an opportunity for the district court expressly to make sums immediately due, and So you are arguing that it's too late in the district court because the proper remedy is a Rule 35 motion, and that's untimely now. I'm saying that that's a remedy that was available, but the government certainly, as it points out in its briefs, had motions it can still make to accelerate payment upon default or upon a change of economic circumstances under Subsection K. There are a lot of motions... So, excuse me, so seriously, you're saying that so long as his economic circumstances have not changed, which they apparently haven't because this retirement account existed from the time of the sentencing, or unless he's in default, which would mean all he'd have to do, whether he's actually done it or not, that's a quibble, all he'd have to do is keep paying the $500 a month, and the retirement account is now untouchable. That's the terms of the judgment, and again, that was the government's decision. You think that's what... Is that possibly what the judgment imagined and contemplated, that, in fact, he would never have to pay back this amount unless he hit the lottery or something new happened that resulted in an infusion of funds? Given the context that he had just repaid over a million dollars before the plea agreement was negotiated between the parties, and given the... We can only speculate, but the context that the government did not include a list of assets to restitute or forfeit, as it ordinarily would, and did not ask the district court to immediately restitute an asset noted in the PSR, and did not challenge the discretion not to so impose that obligation on direct appeal, I think that the record is clear that... No, that's what the judgment says. The judgment is clear. It's not even... It's not that the judgment is ambiguous, and we have to wonder about what the magistrate judge's intent might have been. The judgment is clear as day. There are boxes checked, there's an installment schedule provided, and it had the opportunity clearly to say a lump sum immediately due. The government probably wishes it had asked the judge to do that, and it wasn't done, and there was plenty of time to correct it after the judgment was docketed, but in terms of modifying the judgment, there are still avenues available to the government that it just hasn't proceeded to do here, such as make a motion to accelerate the schedule to lump sum payments upon default. Mr. Silverman, it always seemed to me that to be the more reasonable part of your argument to be asking to be transferred to Philadelphia. Are you planning to talk about that? Yes, Your Honor. The statute is clear that an action shall be transferred upon the debtor's request, and I would note, this is, I think, important. The district court, or the magistrate judge, ruled on the merits because the government did not make a timeliness objection. The magistrate judge said that he had discretion to retain the action, even though the Supreme Court in case after case says that shall is mandatory, not discretionary language, and the government can hardly defend that position on appeal, and so for the first time, raises a timeliness objection that it forfeited below. And it's quite- Why can't the judge who sentenced the defendant, apart from what the government's position to say, look, I'm familiar with this case. He didn't comply with the condition of the statute, so I'm going to proceed. Why does the judge have to get the government's okay? Your Honor, I think that's a, it's not an unreasonable position, but two things. First, the statutory language is clear, and the Supreme Court is clear that shall means shall, and I think as a policy- The statutory language is also clear that it has to be done in 20 days, right? Right, right. So- And you concede it wasn't done in 20 days. I think it's clear. Right, but of course, the government forfeited that and invited the magistrate judge to rule on the merits. And in terms of the policy of transferring, I think it's perfectly reasonable for a Fair Debt Collection Procedures Act to determine that the United States should pursue these actions where people reside. If you have someone in California, and it's commenced in New York, that's an extraordinary asymmetric advantage. It's the United States attorneys that have offices all around the country, not pro se However, it was in part because the government paid to have the defendants transferred to the district to litigate the case. The government certainly could have raised a timeliness objection below. The magistrate judge at 8205 saw no reason for its failure to comply with the court's scheduling order and to oppose the motion, but the magistrate judge, the court below, having proceeded to rule on the merits, this court should too. Although this case is not on all fours with the Eberhardt case that we cite in both of our briefs in which the government doesn't address, it's certainly on three out of four insofar as, in that case, you had a government decline to make a timeliness objection, and it discusses Rule 29 and Rule 33 motions, district court rulings on the merits, and the Supreme Court said, in those situations, the Court of Appeals should proceed to object the merits. And I would also note... I'm sorry. I'm not sure I follow you. Did you say a moment ago that you, that in spite of your motion to transfer to Eastern District of Pennsylvania, that you say that we should rule on the merits regardless whether we transfer? I meant, Your Honor, to be clear, the merits of the transfer motion, Judge Bianco had been asking... No, but the magistrate judge did rule on the merits of the transfer motion. Correct. Correct. And so I believe that this court should also rule on the merits of the transfer motion. I think your time is up, but you have three minutes for rebuttal. We'll hear from Mr. Gura. Good morning. May it please the court. My name is John Gura. I'm an assistant United States attorney in the Southern District of New York, representing the United States. Crime Victims' Rights Act provides that crime victims are entitled to full and timely restitution, and as this court has observed, the MVRA, or the Mandatory Victims Restitution Act, focuses on making victims whole. With that in mind, the district court here reasonably and properly entered orders of garnishment against Mr. O'Brien's retirement account to provide timely, if only partial, satisfaction to the losses suffered by this particular victim. The thrust of O'Brien's argument is that the government cannot employ collection measures beyond what is provided for in the payment schedule. Regardless of whether O'Brien adheres to that payment schedule, regardless of whether O'Brien has assets that can provide timely restitution to his victim, regardless of whether O'Brien agreed in his plea agreement on collection measures notwithstanding a payment schedule, and despite the clear statutory authority that allows the government to take the collection measures that are used here. This court observed in the case of U.S. v. Cohen that district courts may entertain garnishment and other collection proceedings to satisfy restitution orders, and the court noted that nothing precludes the government from initiating collection procedures to collect on an order of restitution. That thinking and that... But Mr. Gorin, in any of those cases, and you cite a number of them where we've said that, that the government can use collection measures to pursue, were any of those cases where there was an argument made that, akin to the one in this case, that there's a repayment schedule and that interferes with the government's ability to do that? Well, the Econ cases and the Schusterman case out of the Third Circuit both noted that there were payment schedules in place, and notwithstanding those schedules, the MVRA gives the government the ability to engage in collection measures, and those measures are provided for in accordance with the policies and practices for collection of civil judgments, which are gone under... Was it argued there, as it is argued here, that the repayment schedule has an effect on that? I take it that you're saying that, factually, there were repayment schedules in some of those cases. Yes. But is there a holding by the court that says, you know, the defendant says the repayment schedule means that he doesn't owe anything, except what he's required to pay under the repayment schedule? Well, certainly the Econ case provides that, because, like here, the defendant was trying to use the payment schedule as a shield against the government's collection measures. And, again, the MVRA provides that the government can engage in these collection measures, imposes no requirement that there be a default or a delinquency under a payment schedule, doesn't reference a payment schedule whatsoever. DeGuerre, their argument is that if the district court or the magistrate judge doesn't use the words due immediately at the time of sentencing, that other than the one case which they say that you've cited, which they said was narrowed subsequently, that you can't then get a lump sum unless you have to say due immediately and payable on the following plan. Is there a problem with the fact that there was no due immediately language? Well, there's a huge problem with relying exclusively on due immediately language. And that's sort of the fallacy that the court was pointing up earlier, which is, if you take the payment schedule and you allow this particular defendant, for example, to simply make payments of $500 a month for the entire liability of the judgment, which is 20 years going forward, at the end of the day, he ends up paying $120,000 based on a criminal sentence of a $2.8 million restitution obligation. And that just can't be what the MVRA and what the Crime Victims' Right Act contemplates. It can't bar the government's collection efforts simply because there's a schedule in place. These collection measures are used in addition to a payment schedule that's imposed by a court. And here, we use the federal remedy of garnishment, and garnishment simply allows for the satisfaction of a judgment of a debtor. Does it impose a finding of default? Does it impose a finding of delinquency? It simply states that if the debtor owes a judgment to the United States, this remedy may be sought. May I ask, Mr. Gore, a technical question that I probably should know the answer to? You've referred to the MVRA several times. Does the MVRA apply in this case where it's a tax obligation? Well, the restitution imposed here wasn't subject to 18 U.S.C. 3663 A. Rather, it was the preceding section, 3663 small a 3, which says that restitution for any crime may be imposed pursuant to a plea agreement. So once restitution is imposed, to put it simply, restitution is restitution, and it applies to provisions of the MVRA, which would be in 3613 A, which allows for the collection measures, and in 3664, et cetera. So yes. Okay. I got that. And the other technical question is, this is not restitution imposed as a condition of supervised release. Is that correct? It is simply a penalty or whatever you want to call it, a portion of the judgment that has independent effect apart from supervised release. It is criminal restitution for unpaid and unfiled taxes. It's not a penalty in the sense that an IRS might impose a penalty. So the $2.8 million represents the actual loss of the victim. Right. But it is just like he has to go to jail for X period of time, just like he has to be on That's correct. And that is independent of the supervised release. Because in the old days, before these statutes were passed, restitution was set up as a condition of release when it was imposed as part of probation or parole or something like that. That's correct, Your Honor. Mr. Gora, I don't understand why you should be entitled to prevail at this point on a to be clearly merited if you were allowed to raise it. Why should you be allowed to raise untimeliness in the Court of Appeals when you never raised it in the district court with respect to his request to have this transferred to Pennsylvania? And a second part of my question is, why doesn't the statutory provision that says that it shall be transferred upon the request of the obligor to the government, why doesn't that mean what it says? It shall be transferred. It's obviously a provision that makes perfect sense that the government can argue any place in the country. The defendant is entitled by statute to have efforts to collect against him by the government take place where he resides if he so requests it. Now you didn't raise untimeliness in the district court. You're raising it now. Why should you be entitled to do that? To answer the second part of Your Honor's question first, with respect to mandatory or the court shall transfer, as the judge noted earlier, there is a precondition that is if the defendant, make or debtor, makes the request within 20 days of the notice. But you can waive that. You can waive that and you did forfeit it. Well, it's true, Your Honor, that we did not raise the argument in the district court. But in view of the schedule that was in place before the district court, Mr. O'Brien made no argument substantive regarding not only that issue, but regarding the underlying garnishment order in this case. In the view that Mr. O'Brien had abandoned his claim, the government did not make an argument and that was an error, clearly. Would it be fair to say, Mr. Gurd, to characterize your argument as not that you are entitled to raise the timeliness issue at this point, but that we may or we have the discretion to overlook it. And you are arguing that we should exercise that discretion to overlook the forfeiture and consider the substance of the argument. That's correct, Your Honor. What we're arguing basically is what the district court did was within the rights, within the realm of the statute. Since the 20-day precondition wasn't met, it was left within that district court's discretion to... But the district court didn't rely in any way on timeliness. No. The district court... Yes, you're correct, Your Honor. The district court simply treated the words, shall transfer, as meaning, shall transfer unless the district court would like to, feels that it should go ahead and handle the case itself. Well, the court referenced or cited to a number... Well, it's cited to U.S. v. Matthews, which is a District of D.C. case, which collects several other cases which provides that. Notwithstanding the mandatory language in that particular statute, the court still may retain jurisdiction over the matter since it was the court that actually imposed judgment. And here are the reasons cited by the district court were also reasonable given that defendant's proximity to New York, the location of the garnishee was in New York, and... Well, Mr. Gerr, I mean, that's all well and good, but it's a little hard to get over, to make shall mean can if it's appropriate, but not if it's not appropriate. It says shall. Of course, as you said earlier, there's a precondition. If the motion is timely, then it is mandatory. If it's not timely, I take it a defendant could still, in an appropriate case, request that it be moved, and then there would be a question of discretion. If the issue was here's a poor man in San Francisco, and there's no offer by the government to pay his fare back to New York, that would be oppressive. If it's Philadelphia, maybe not so much. That would be if the motion was not timely. And I guess what I'm asking you is, do we have the discretion in the government's view to overlook the forfeiture and say that at least given that, I mean, there are cases which I also have trouble with saying that sometimes it's harmless error not to comply with the mandatory statute. I'm not sure that's right either. On the other hand, if the question is, shall we overlook the government's forfeiture of an argument and exercise our discretion to consider the argument anyway, perhaps then the harmlessness argument is if there were prejudice, we certainly wouldn't exercise our discretion. If there's no prejudice, because the merits are clear, and there wasn't really an argument made in substance to the district court until much later, maybe in that circumstance, we should overlook the forfeiture. Is that some part of the government's argument? That is, to the extent that the government may have waived this by not having raised it to the district court, it should be excused given the circumstances of just how the case played out. Of course, it is a little ironic for the government to say we should overlook the forfeiture that we did by not objecting as we were required in a timely way, and enforce the requirement that the defendant exercise, make an objection in a timely way. Understood, Your Honor. To which I would add that the defendant was a lot closer to being timely than you are. Understood, again, Your Honor. However, the actions of the district court here were completely within keeping with the statute. Again, the precondition for mandatory transfer wasn't met, leaving it to the discretion of the district court to retain jurisdiction. Reasons that offered were completely reasonable and relevant to overseeing the judgment that the court entered. So, coming back to Judge Lynch's question to you, why is shall less applicable to us than to the district court? If the argument of untimeliness was simply not properly raised, was not brought out in the district court, we are an appellate court reviewing what the district court did. Why are we in a better position, in a more authorized position, to say, oh, well, we're not going to treat shall as mandatory where it wasn't raised in the district court, although nobody raised that question in the district court. Why is that an option for us? Because notwithstanding the fact that the argument wasn't raised below, the fact remains that the statute provides that for shall to operate as a precondition to mandatory transfer of venue, and that just wasn't met here. That court could observe that just by looking at the timeline of this case. It doesn't need the government to raise that to the court for it to understand that the district court acted reasonably and within its discretion under the statute. Are you arguing that there's no prejudice to O'Brien? I would argue that there's no prejudice to O'Brien. Why is there no prejudice to somebody who, an indigent person, who has to travel 90 miles rather than, I mean, the statute is designed to allow a person against whom the government is trying to collect to do so at his home place rather than have to travel to do it, and he's indigent. The expense of a train ticket or a bus ticket from Philadelphia to New York is not huge, but that depends on whether you've got money or not. Well, I think we need to back up first to discuss whether O'Brien was even entitled to a hearing. He made no substantive claims and didn't allege... He doesn't need substantive claims, does he? He's entitled to have... The statute doesn't say he has to make substantive claims. The statute simply says he's entitled to have the proceeding take place in his place of residence. No, Your Honor. In order for him to get a hearing, he must articulate a reason for holding that hearing, and that would mean that he put forward... He's raised a lot of claims. There are a lot of substantive issues before us, whether they have merit or not. None of which satisfy Section 3202D requirements for obtaining a hearing relating to a garnishment. He would have needed to show a valid exemption. He alleged none. He made no substantive claim. And the only exemption that he alluded to was overruled by this court in U.S. v. Irving, saying that retirement accounts aren't protected from restitution collection efforts. Right. Thank you. Thank you, Mr. Gura. Thank you, Your Honors. Silverman, you have three minutes for rebuttal. Thank you, Your Honor. Just quickly to correct the government's timeline, because I think it goes to the prejudice issue that Judge LaValle was raising. At A110 on October 23rd, 2018, Mr. O'Brien put in an affidavit making substantive claims that are unrebutted thus far, that he was not in default. And I note that footnote 12 in the government's brief corroborates it in part as a concession, but put in substantive contentions, unrebutted the next day. Hold on, Mr. Silverman. Paragraph 11 of his own affidavit, he says he's talking about the restitution amounts as of October of 2018. And he says, I had made more than $4,800 in aggregate restitution payments. I also calculated the amount I was in arrears against monthly payment obligations was approximately $1,200. So, you know, I understand there's no motion for default, but you keep saying it's unrebutted, that there was no default. When paragraph 11, he admits that he was $1,200 behind in his payments. Right. But he also admits that he had worked out a schedule with the probation officer. And he says that there are payments that are not reflected in the record. The next day, the district court holds a conference and orders the government to respond to the motion to transfer venue, right? About prejudice, though, the judge had a status conference, right? And set a date by which your client should put objections. He missed the date, the 20 days for a hearing. He didn't file that in a timely way. But then when the judge said, okay, here's the date for your fire objections. He failed to yes from extension. The judge gave him an extension of two weeks and then he failed to do so again. So I don't understand how the fact that he was in Pennsylvania and didn't get the case transferred prejudiced him from putting in objections in the manner that the court requested. Well, two things, Your Honor. First, both parties failed to comply with the district court's order. And I do think it's notable that affirming the judgment would require that to lead to waiver only against the unrepresented party and not against the United States. But in terms of his objections, there are substantive disputes in his affidavit. But both parties concede they should have complied with Judge Pittman's order. It's unclear from the record why there was that mutual failure. Maybe it's inexplicable, but it was mutual after there were substantive contentions put in. And so when the government did not oppose the motion to transfer, it knew that there were substantive disputes. The government seems to be saying that when someone says they're not in default and puts forward facts, the district court doesn't have to resolve the facts by holding a hearing or otherwise resolving the facts under 3202. And I don't think that's sustainable. Why would the court have to resolve that issue if the government is correct that it is entitled to do what it did regardless of whether there was a default on the payment schedule? Thank you, Judge Lynch. The government is clearly right that it's entitled to garnish money that's owed to it. If it's owed $500 a month, it can garnish $500 a month, but not $600, just like your mortgage holder can't compensate. Right, right, right. But that's your argument on the merits. We're talking here about a contention that it was necessary for the district court to hold a hearing. Of course, if it was necessary to hold a hearing in order to find a default on the payment schedule, you win anyway, because that is your argument on the ultimate merits that absent a default, they can't garnish this retirement account, which is what is an issue. So it's something of a red herring, I think, to argue that there was a dispute about whether he was $1,200 behind or $4,800 behind or not behind at all. If the government is right in the substantive interpretation of what they were, that they were entitled to do what they did, which is what the district court held, then these issues about should there have been a hearing, did the poor defendant have to buy an Amtrak ticket or not, are entirely irrelevant, because that could be resolved on papers. It's a legal question. It's not a question that requires an evidentiary hearing or anybody's presence. Well, of course, the government never made a motion to modify the judgment on the basis that Mr. O'Brien is not in default. And so to the extent it's implicitly asking this court to grant that motion for the first time on appeal, that's quite procedurally improper. The motion was never made. Isn't the argument all along, hasn't the argument all along been that regardless of the failure to check the box for immediately due, either because that's not a requirement substantively or because the plea agreement waives in advance any such argument, the government is entitled to proceed against this retirement account regardless of whether there is a default or  Right. The government has made that argument, but that is quite mistaken. And I think it gets back to trying to put a square peg into a round hole here. When we have a situation with a judgment, many other judgments, as we noted in our brief by district judges and tax cases, check the box, say immediately due, right? Other circuits that have looked at this, the 10th and the 5th Circuit, the government cites a con, but in Hughes, the 5th Circuit can find a con to facts that are not relevant here and held that when you have a payment schedule without a sum immediately due, that the money is not. Other circuits have been known to be wrong, though. Sure, but the government is asking for a circuit split. And in the Martinez opinion from the 10th Circuit, the logic is quite compelling. When a district court has an opportunity to impose an obligation and explicitly declines to, that must mean something. There's a reason why there are different boxes on the schedule in particular. Exactly. It means that the defendant is not in default if he keeps up with his payments. He can't be compelled to do something. He can't be punished for failing to do something. That's very significant. If he willfully fails to pay according to the repayment schedule, he might be in contempt of court, right? He can't be in contempt of court if he is complying with the repayment schedule. That's a substantial difference as to whether it's due immediately or due on a repayment schedule. But this is a different argument. The government is arguing that they're entitled under the plea agreement to take such collection efforts as would ordinarily be taken with a debt. And I don't see how you can say it's not that the man doesn't owe a debt to the government when the court imposed a restitution obligation of over $2 million. Well, there is the broader debt, but then there are terms to the debt collection. And an 11C1A charge bargain, this is a charge bargain. It's not a normal 11C1B plea agreement. It's a contract. It's a bargain. It's an agreement. Excuse me. If there was a waiver in that agreement of appeal rights, you wouldn't say, oh, no, no, this is only a charge bargain. That term doesn't mean anything. It's part of the charge bargain. You get your reduced charge in exchange for agreeing to certain things. But, Your Honor, it's a charge bargain that says, as most plea agreements do, that the sentence will be determined by the court and then separately says that it contemplates a payment plan. And then separately says in the immediately following sentence that the payment plan does not constrain the government from taking action to collect on the restitution that he has agreed to pay. So two points, Your Honor. First, if the converse were true, if the magistrate judge had not imposed a payment schedule, if he had said, I don't get it. Look at the PSR. There's this asset. The PSR makes clear in a footnote, it doesn't even give the full size of the asset. It gives a three-year annualization, right? If the judge had said, why a payment schedule? This asset should be due, right? It ordered it due. Mr. O'Brien would not be able to fall back on the plea agreement and say, stop the government. You know, you promised a payment schedule. You're bound by this agreement. And as to the subsequent language about other assets. I'm not sure about that. For example, if the government advocated for that collection, then the defendant would certainly be entitled to argue that they are stopped from making that argument. And if the judge went ahead and ordered immediate payment in a situation where the government had already agreed that he couldn't pay immediately and that there should be a repayment schedule, the defendant would be entitled to appeal. Would he not? Right. But this is not about recommendations. And, you know, what Your Honor is saying often comes up in recommended guidelines ranges. But this is not about the recommendation. The government is saying that it is not bound by the final judgment because there's a separate agreement, even though this is not a breach of contract action, right? Even though this is brought on the criminal docket sheet to enforce the judgment, right? Not as a breach of contract action to enforce this separate agreement, right? Which you never see. The government is clearly manifestly trying to enforce the court's order, the court's judgment that it obtained with what it presented to the court. And, you know, I understand why the government may have buyer's remorse. I certainly sense the court's lack of sympathy here. But I also think it's important. We very frequently have it as more than one year after the final appeal that it is the defendant coming before this court and trying to find exceptions to finality under circumstances where matters were not sought to be corrected under Rule 35, where the district court's discretion in imposing this judgment was not directly appealed by the government, right? Where other avenues to modification remain open to the government to this day, but have never been pursued by the civil division. And it usually would be the government coming before this court and talking about the importance of finality. But respectfully, finality runs both ways. And both parties have an interest in finality here. And Mr. O'Brien, in a suit that's not bought for, not commenced for breach of a plea agreement, a plea agreement that certainly says, with the language that Judge Lynch, that Your Honor points to, that certainly would not allow him to use it as a shield, claiming double jeopardy or race judicata and a subsequent IRS action or in some subsequent action to go after money not obtained in the restitution in this case, right? Other actions. But in an action on this docket sheet, the criminal docket sheet to enforce the criminal judgment that has been final with the appeal more than five years since mandate, right? Both parties have the same interest in finality here. All right. We understand the argument, Mr. Chairman. Thank you very much. Thank you to both of you.  We'll reserve the decision. Thank you, Your Honor.